IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No.: 5:24-CV-440-FL

| | |
|---|---|
| MICHAEL SCOTT DAVIS, STETSON MANSFIELD WEBSTER<br><br>Plaintiffs, *Pro Se*<br><br>v.<br><br>BRIAN RATLEDGE, JENNIFER BEDFORD, JULIE BELL, DAMION MCCULLERS, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES AS JUDGES.<br><br>Defendants. | MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT |

NOW COME Defendants Brian Ratledge, Jennifer Bedford, Julie Bell, and Damion McCullers ("Judicial Defendants"), all District Court Judges in North Carolina's 10th Judicial District, in their official and individual capacities, to respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (6).

## INTRODUCTION

Plaintiffs seek federal court review of actions taken by state district court judges during each of their respective domestic child custody and child support cases. This case should be dismissed because it is barred by the Rooker-Feldman doctrine. Even if this court could exercise jurisdiction over these claims, the considerations of comity and federalism counsel the federal court to abstain from jurisdiction pursuant to the

1

domestic relations doctrine and Younger.  In addition, the official capacity claims against Defendants are barred by Eleventh Amendment immunity, the personal capacity claims are barred by absolute judicial immunity, and Plaintiffs fail to state a claim for which this court can grant relief.

## STATEMENT OF THE CASE

Michael Scott Davis ("Davis") and Stetson Manfield Webster ("Webster") commenced this action on July 30, 2024, by filing a "Complaint for False Imprisonment Pursuant to 28 U.S.C. § 1367" (DE 1) and a "Complaint for Violation of Civil Rights Pursuant to 42 U.S.C. § 1983, with Memorandum of Law." (DE 1-1) On August 20, 2024, Plaintiffs filed a subsequent "Complaint for False Imprisonment Pursuant to 28 U.S.C. § 1367" (DE 7); "First Amended Complaint for Violation of Civil Rights Pursuant to 42 U.S.C. § 1983, with Memorandum of Law" (DE 8) and "Memorandum in Support regarding Amended Complaint." (DE 8)  It is unclear to Defendants which of the aforementioned filings Plaintiffs' intended to serve as the most recent, operative version of their claims. Construing these pleadings liberally, for purposes of Defendants' Motion to Dismiss and Memorandum of Law in Support thereof, DE 7, DE 8, and DE 9 are considered collectively as a single "First Amended Complaint" since they were filed on the same date.

## SUMMARY OF FACTS

I. **Plaintiff Davis**

    a. Judge Ratledge

In November 2019, Judge Michael Denning filed a Permanent Custody Order as part of an ongoing domestic case between Davis and his ex-wife ("Defendant Law"). (DE 1-3 Permanent Custody Order[1]; DE 1-6 Motion for Relief p. 2) On March 4, 2020, Davis filed a Rule 60(b) motion. (DE 8 p. 7) On December 10, 2021, Davis filed a motion for Rule 11 sanctions against Defendant Law. (DE 1-12 pp. 1-2) The Rule 60(b) motion was heard and denied by Judge Ratledge. Id.; Davis v. Law, No. 14 CVD 15242, 2022 N.C. Trial Order LEXIS 1 (Wake Cnty. Dist. Ct., North Carolina March 31, 2022). On the same day, Judge Ratledge also heard and denied Davis's April 23, 2018 Motion for Modification of Child Support Order. (DE 8 p. 6; DE 1-7; DE 1-8)[2] Davis alleges "multiyear delays between calendaring and court dates" resulted in due process violations. (DE 8 p. 3) Davis also alleges Judge Ratledge was unprepared for the March 2, 2022 hearing and inappropriately relied on a "gut feeling." (DE 8 pp. 7, 11-12; DE 9 pp. 7-8) On May 17, 2022, Judge Ratledge denied Davis's motion for Rule 11 sanctions. Davis v. Law, No. 22-1053 and 22-1054, 2023 N.C. App. LEXIS 759 at *10 (N.C. Ct. App. December 5, 2023).

Davis appealed Judge Ratledge's March 31, 2022; May 17, 2022; and November 2, 2022 orders to the North Carolina Court of Appeals[3]. (DE 1-2); Davis, 2023 N.C. App. LEXIS 759 at *1. Davis accuses Judge Ratledge of improper judicial

---

[1] The page numbers on the Permanent Custody Order indicate there are 19 pages; however, only 10 pages are included in Plaintiffs' exhibit DE 1-3.
[2] Only the first two pages of the Order Denying Plaintiff's Motion were attached as Plaintiff Davis's DE 1-8.
[3] Davis filed two appeals, case numbers COA22-1053 and COA22-1054. The N.C. Court of Appeals consolidated the two appeals into one opinion. Davis v. L., 291 N.C. App. 519 (2023), review denied, 898 S.E.2d 299 (N.C. 2024).

conduct and infringement of his constitutional rights. (DE 8 pp. 15-20; DE 9 pp. 24-27) Davis appealed these rulings, and the North Carolina Court of Appeals found no error. Davis, 2023 N.C. App. LEXIS 759. On December 18, 2023, Davis filed a petition for discretionary review in the North Carolina Supreme Court which was denied by the court on March 20, 2024. (DE 1-25; DE 8 p. 19; DE 9 p. 26)

On October 7, 2022, Judge Ratledge presided over a hearing on a motion for protective order filed by Davis and a motion for civil contempt for failure to comply with a child support order. DE 8 p. 20-22; DE 9 p. 28-31. Judge Ratledge found Davis to be in civil contempt and ordered him confined until he paid a purge amount of $829.74 plus $1,000 in attorney's fees. Davis alleges that the manner in which Judge Ratledge managed the hearing "strongly suggests malice and personal bias" and justifies investigation under 18 U.S.C. § 242. (DE 8 p. 21; DE 9 p. 34) Davis filed an appeal; however, the court dismissed it as an interlocutory appeal. (DE 1-27)

 **b.** <u>Judge Bedford</u>

On October 6, 2023, Judge Bedford presided over a civil contempt hearing upon Defendant Law's motion to show cause. (DE 1-21 p. 4; DE 1-22) Both Davis and Defendant Law were present and represented by counsel during the hearing. (DE 1-22) Judge Bedford found Davis to be in civil contempt of court. Id. The court ordered Davis to pay $8, 971.51 arrears in child support the same day of the hearing and to pay an additional $4,070.50 in attorney's fees. DE 1-21 pp. 61-62.

**II.**  **Plaintiff Webster**
  **a.** <u>Judge McCullers</u>

On September 26, 2022, Judge Damion McCullers presided over a civil contempt hearing pursuant to a motion for show cause against Webster. (DE 1-31 pp. 1-2) Webster was found to be in contempt and ordered to pay the arrearage. (Id. p. 4) Judge McCullers stayed the order to give him time to pay the purge amount but if Webster did not comply, an order of arrest would be issued. Id. Webster appealed the order. Webster v. Devan-Webster, No. COA 22-975, 2024 N.C. App. LEXIS 154 at *2-3 (N.C. Ct. App. March 5, 2024) ("Webster I"). The court affirmed Judge McCullers's order finding Webster in civil contempt of court. Id. at *6-7.

    **b.** Judges Bell and Bedford

Webster alleges multiple constitutional violations committed by Judges Bell and Bedford. (DE 8 pp. 26-38; DE 9 pp. 45-65) The majority of Webster's allegations arise from "unreasonable delays in resolution and issuance of orders" in the pending domestic case with Devane-Webster. Id. Webster contends that Judge Bedford was "acting willfully and in bad faith" when she continued a pending Motion to Show Cause in state district court while the appeal on the same matter was pending in the N.C. Court of Appeals. (DE 9 pp. 47-48; DE 1-53) During the state litigation, Webster also filed a writ of mandamus to the appellate court with respect to Judge Bell's alleged delays. (DE 1-40) The writ was dismissed without prejudice to allow Webster to refile and include necessary documentation, (DE 1-41), but Webster never refiled the writ. The orders issued by Judge Bell and Judge Bedford were all appealed and reviewed in the North Carolina Court of Appeals. Webster v. Devan-Webster, No. COA 22-976,

2024 N.C. App. LEXIS 155 (N.C. Ct. App. March 5, 2024) ("Webster II"); Webster v. Devan-Webster, No. COA 22-977, 2024 N.C. App. LEXIS 170 (N.C. Ct. App. March 5, 2024) (Webster III"). In each case, the appellate court affirmed the trial court's orders. Webster II *13; Webster III at *4.

## LAW AND ARGUMENT

### I. STANDARDS OF REVIEW

This Court must dismiss all or part of a complaint over which it lacks subject matter and personal jurisdiction. Fed. R. Civ. P. 12(b)(1) and (2). This threshold question must be addressed by the court before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647–50 (4th Cir. 1999). In conducting its review of whether jurisdiction is proper, "the facts alleged are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). Whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina; therefore, this motion to dismiss raises both. See M Series Rebuild, LLC v. Town of Mount Pleasant, Inc., 222 N.C. App. 59, 59 (2012).

A complaint may be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). To survive a Fed. R. Civ. P. 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). *Pro se* complaints should be construed liberally and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## II. THE ROOKER-FELDMAN DOCTRINE BARS PLAINTIFFS' CLAIMS

Federal district courts are precluded "from exercising what would be, in substance, appellate jurisdiction over final state-court judgments." See Hulsey v. Cisa, 947 F.3d 246, 250 (4th Cir. 2020). The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

7

review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Rooker-Feldman doctrine prevents the federal court from determining that a state court judgment was erroneously entered or taking action that would render a state court judgment ineffectual. Jordahl v. Democratic Party of Virginia, 122 F.3d 192, 202 (4th Cir. 1997). The Rooker-Feldman doctrine "bars lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005). An issue is "inextricably intertwined" with those before the state court if "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997); see also Davani v. Virginia Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006) ("A claim seeking redress for an injury caused by the state-court decision itself – even if the basis of the claim was not asserted to the state court – asks the federal district court to conduct an appellate review of the state-court decision.") Plaintiffs ask this Court to do exactly what Rooker-Feldman forbids – review the state court proceedings and determine that judicial decisions by Judge Ratledge, Judge Bedford, Judge Bell, and Judge McCullers were erroneous.

Plaintiff Davis alleges that procedural delays and judicial mistakes made by Judge Ratledge and Judge Bedford during his Wake County family court case violated his constitutional rights. This Court has already rejected Davis's claims on this basis. Davis v. Wake Cty., No. 5:24-cv-00059-M-RN, 2024 U.S. Dist. LEXIS 104067, at *9

(E.D.N.C. May 17, 2024). As Magistrate Robert T. Numbers previously noted "Davis has lost his case in state court and has come to this court "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. So the Rooker-Feldman doctrine bars his claims." Id. at *9-10 (internal citations omitted). These proceedings have already been litigated and decided, not only by the trial court, but also affirmed by the North Carolina Court of Appeals, and a subsequent writ denied by the North Carolina Supreme Court. (DE 8 pp. 5-6; DE 9 p. 10-11; DE 1-25)

Likewise, Plaintiff Webster's allegations of procedural delays, errant rulings and judicial mistakes were already litigated at the state trial and appellate courts. Accordingly, the Rooker-Feldman doctrine bars each plaintiff's claims and this Court should dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## I. ABSTENTION DOCTRINES BAR PLAINTIFFS' COMPLAINT

### A. The Domestic Relations Abstention Doctrine

"[I]t has long been a hallmark of our federalism principals that full authority over domestic-relations matters resides not in the national government, but in the several States." Ojo v. Lynch, 813 F.3d 533, 540 (4th Cir. 2016). The Fourth Circuit has long endorsed abstaining from exercising jurisdiction in the context of family-law issues. Desper v. Demastus, No. 7:20-CV-00749, 2021 WL 5049773 (W.D. Va. Nov. 1, 2021) (citing Doe v. Doe, 660 F.2d 101 (4th Cir. 1981). Although Plaintiffs' claims are couched as constitutional violations, it's evident that Plaintiffs' claims are really

objections to the state court judgments on child support, child custody and related findings of civil contempt. (DE 8 pp. 5-7, 25-28, 40-41; DE 9 pp. 5, 7, 11, 14, 17, 20, 24) This is a matter best resolved by the state court in proceedings related to these matters. To the extent any of Plaintiff's claims survive, in accordance with Fourth Circuit precedent, this Court should abstain from intervening in state family law issues.

### B. Younger Abstention

The Younger abstention doctrine is premised upon "a strong federal policy against federal-court interference with pending state judicial proceedings." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) (citing Younger v. Harris, 401 U.S. 37 (1971)). The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved. Middlesex County Ethics Committee, 457 U.S. at 432. The threshold requirements for Younger abstention are (1) that federal intervention would interfere with an "ongoing state judicial proceeding", (2) that "the proceedings implicate important state interests", and (3) that there is an "adequate opportunity in the state proceedings to raise constitutional challenges." Id.

In this case, the domestic relations and child support proceedings are ongoing and pending in the District Court of Wake County, North Carolina. Ascertaining the support and welfare requirements of the children in its jurisdiction is an important state interest. Harper v. Pub. Serv. Comm'n of W.VA., 396 F.3d 348, 354 (4th Cir. 2005) (finding that interests such as family law "lie at the heart of state sovereignty, and a failure to abstain in the face of ongoing state proceedings would disrespect the

allocation of authority laid in place by the Framers.") Younger instructs the federal court to abstain from interfering with pending state court matters such as the ongoing family law matters alleged here.

## II. JUDICIAL DEFENDANTS, WHEN SUED IN THEIR OFFICIAL CAPACITIES, ARE NOT PERSONS SUBJECT TO SUIT UNDER § 1983

A Section 1983 claim has two elements: "(1) a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law." Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011). This Court should first determine whether the Judicial Defendants are "person[s]" subject to suit under § 1983. Neither States nor state officials acting in their official capacities are "person[s]" within the meaning of 42 U.S.C. § 1983 when the relief sought is monetary. Fauconier v. Clarke, 966 F.3d 265, 279–80 (4th Cir. 2020) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). The Court should dismiss Plaintiffs' claims for damages against Judicial Defendants, in their official capacities, because Defendants are not "person[s]" subject to liability under 42 U.S.C. § 1983.

## III. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' OFFICIAL CAPACITY CLAIMS FOR DAMAGES AGAINST DEFENDANTS

Plaintiffs' claims against Defendants in their official judicial capacities are barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution prohibits "any suit in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

State." U.S. Const. amend. XI. Under the Eleventh Amendment "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662–63 (1974). This immunity attaches to not only states, but also to state officials sued in their official capacity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself."); Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998) (explaining that under the Eleventh Amendment federal courts cannot "entertain claims seeking . . . either compensatory or other, for completed, not presently ongoing violations of federally-protected rights.").

At all times relevant to this lawsuit, Defendants were District Court Judges in North Carolina's 10th Judicial District. In North Carolina, a district court judge is a state judicial official. N.C. Gen. Stat. § 7A-140; N.C. Const. art. IV, Sec. § 10 (NC constitutional provision for district courts). Therefore, Plaintiffs' official capacity claims seeking monetary damages against Defendants are barred by the Eleventh Amendment.

Plaintiffs' official capacity claims for non-monetary relief are likewise barred. Exceptions to Eleventh Amendment sovereign immunity are narrow. A lawsuit against a State, or State official, may only proceed when one of the following three narrow exceptions applies: (1) where Congress, while acting pursuant to its powers under the Fourteenth Amendment, has properly abrogated a state's immunity,

Fitzpatrick v. Bitzer, 427 U.S. 445, 452–56 (1976); (2) where a state has waived its immunity to suit in federal court, Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); or (3) where a private party sues an appropriate state officer for prospective injunctive or declaratory relief from an ongoing violation of federal law, Ex parte Young, 209 U.S. 123, 155–56 (1908). The Amended Complaint does not implicate the first two exceptions. The third exception under Ex Parte Young also does not apply as explained below.

The doctrine of Ex parte Young provides a limited exception to Eleventh Amendment immunity where suit is brought against state officials in their official capacities, and "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998). However, "the exception does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or other, for completed, not presently ongoing violations of federally-protected rights." Id.

The Eleventh Amendment is a jurisdictional bar to declaratory judgments that a state official has violated federal or state law in the past. Green v. Mansour, 474 U.S. 64, 68 (1985). A declaratory judgment requires an ongoing constitutional violation for which prospective relief is available. Int'l Coal. for Religious Freedom v. State of Maryland, 3 F. App'x 46, 49 (4th Cir. 2001). The Supreme Court makes clear that federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." Spencer v. Kemna, 523 U.S. 1, 30 (1998).

13

Plaintiffs ask this Court to 1) declare that "the arrest and incarceration of Plaintiffs constituted false imprisonment under North Carolina law" and 2) declare that the trial court violated Plaintiffs' due process rights under the Fourteenth Amendment. (DE 7; DE 8 p. 42) In other words, Plaintiffs ask this Court to review and determine whether discrete, past judicial actions were right or wrong. While the domestic cases may be ongoing, the specific orders and decisions challenged were entered by Defendants in the past and have already been reviewed by the state appellate court. Because Plaintiffs seek a declaration of past alleged wrongs, the doctrine of Ex parte Young is inapplicable, and Plaintiffs' claims for declaratory relief are barred by the Eleventh Amendment.

Plaintiff's other requested relief – "an injunction to prevent future violations of the Plaintiffs' due process rights and ensure compliance with constitutional requirements in future proceedings" – does not fall within the Ex Parte Young exception either. By its own express terms, the Ex parte Young exception does not apply to judicial officials. As the court explained "the right to enjoin an individual, even though a state official does not include the power to restrain a court from acting in any case brought before it," since "an injunction against a state court would be a violation of the whole scheme of our Government." Ex parte Young, 209 U.S. at 163.

To the extent Plaintiff brings official capacity claims against the Judicial Defendants arising under North Carolina law, those claims are barred by state principals of sovereign immunity, regardless of relief sought. See White v. Trew, 366 N.C. 360, 363 (2013) ("It is well settled that pursuant to the doctrine of sovereign

immunity, the State is immune from suit absent waiver of immunity.")

## IV. ABSOLUTE JUDICIAL IMMUNITY BARS PLAINTIFFS' CLAIMS

It is well-settled that a judge may not be attacked for exercising judicial authority. Dean v. Shirer, 547 F.2d 227, 231 (4th Cir. 1976). The Supreme Court recognized judicial immunity to be "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. 335, 347 (1871). So strong, in fact, is the doctrine of judicial immunity, it survives even when the exercise of judicial authority is done improperly. Dean, 547 F.2d at 231.

For judicial immunity to apply: (1) the act complained of must have been a judicial act; and (2) the judicial officer did not act in the clear absence of jurisdiction. King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992). Judges are not liable in civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly. Bradley, 80 U.S. at 352. Judicial immunity, like other forms of official immunity, is an immunity from suit, not just from an ultimate assessment of damages, and is not overcome by allegations of bad faith or malice. Mireles v. Waco, 502 U.S. 9, 11 (1991). This immunity protects judges from the burdens that accompany litigation and reduces the risk that aggrieved litigants will file suits against judges as a means of collaterally attacking adverse judgments. Mireles, 502 U.S. at 11; Mitchell v. Forsyth, 472 U.S. 511, 521–22 (1985).

Judicial immunity applies in this case because the acts complained of were

judicial acts taken within the jurisdiction of District Court in Wake County, North Carolina. Presiding over child custody cases, entering orders for financial support, civil contempt, various motions filed by the parties – these are all judicial acts. N.C. Gen. Stat. § 7A-244 provides:

> The district court division is the proper division without regard to the amount in controversy, for the trial of civil actions and proceedings for annulment, divorce, equitable distribution of property, alimony, child support, child custody and the enforcement of separation or property settlement agreements between spouses, or recovery for the breach thereof.

Further, as district court judges, Defendants have contempt powers under N.C. Gen. Stat. § 5A-21 through § 5A-25 to preside over civil contempt hearings, enter findings and orders of contempt, and imprison contemnors who do not come into compliance with a court order.

While Plaintiffs contend this lawsuit is not an attempt to challenge the legitimacy of the judgments made by Defendants, their aim is exactly that. (DE 9 p. 3) Plaintiffs have challenged the judicial orders at issue multiple times through motions to reconsider, motions to stay, motions to set aside, state appeals, writs of mandamus and writs for certiorari. (DE 1-10; DE 1-24; DE 1-27; D 1-28; DE 1-32; DE 1-35; DE 1-36; DE 1-37) Plaintiffs attempt to raise the specter of "malice" in an attempt to circumvent absolute judicial immunity also fails. (DE 8 p. 21; DE 9 pp. 11, 36) Judges "are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."

Dean, 547 F.2d at 230 (quoting Bradley, 80 U.S. 335). Absolute judicial immunity bars Plaintiffs' claims.

## CONCLUSION

For all the reasons explained above, Plaintiffs' claims are barred and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (6). Should the court dismiss Plaintiffs' claims brought under 42 U.S.C. § 1983, the court should decline to exercise supplemental jurisdiction over the state claim alleging false imprisonment.

Respectfully submitted, this the 21st day of October, 2024.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Chris D. Agosto Carreiro
Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6874
Facsimile: (919) 716-6755
ccarreiro@ncdoj.gov
State Bar No. 45356
*Attorney for Defendants*

# CERTIFICATE OF WORD COUNT

I hereby certify that this brief, including the body of the brief, headings, footnotes, citations and quotations, but excluding the caption, signature lines, required certificates, attachments, and exhibits, contains 4, 333 words according to word count generated by the word processing software.

/s/ Chris D. Agosto Carreiro
Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this day electronically filed this **Memorandum in Support of Motion to Dismiss Plaintiffs' Amended Complaint** using the CM/ECF system, which will send notification of such filing to the *pro se* parties who have consented to receive electronic service of all motions, notices, orders, and documents in civil cases in the Eastern District of North Carolina via the CM/ECF system.

This the 21st day of October, 2024.

/s/ Chris D. Agosto Carreiro
Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice